# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

SONNY SZETO,                              :

    Petitioner                :

                                             CIVIL ACTION NO. 3:CV-14-0248

    v.                        :

                                             (Judge Mannion)

M. RECKTENWALD, Warden           :

    Respondent                :

## MEMORANDUM

Sonny Szeto, an inmate confined in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania (FCI-Allenwood) filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241, challenging a disciplinary proceeding that arose from an incident report he received for fighting with another person. (Doc. 1, petition). Szeto alleges that the Discipline Hearing Officer's (DHO) finding he committed the prohibited act of fighting was not supported by the facts. Id. He claims the DHO made an unjust conclusion since there was a lack of physical evidence that he was engaged in a fight. Id. Specifically, Petitioner claims that he is "factually and actually innocent of the accusation written in the incident report: therefore, the sanction of lost good time credit is unwarranted." Id. As such he "urges this Court to review the physical evidence submitted as exhibits which will clearly reflect that Petitioner's complaint is true and accurate." Id. For relief, Petitioner

seeks the expungement of the incident report and sanction. Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.     **Background**

On April 09, 2013, Szeto was served with Incident Report No. 2430576 charging him with Fighting, a Code 201 violation. (Doc. 3-1 at 11, Incident Report). The incident report, which was written by J.M. Cramer, Case Manager, reads as follows:

> On the above date and time[1], as I was exiting the Brady A Unit doorway, I observed inmate Hardison #10219-033 and SZETO #16365-014 engaged in a physical altercation just to the right side of the Brady A Unit door. Specifically, I observed both inmates squared off in fighting stances with their hands up to their faces. Inmate Hardison struck inmate Szeto with his left hand in on the right side of Szeto's face as I approached the door. Szeto was stepping toward Hardison in a fighting stance when I opened the door and gave both inmates a direct order to separate and get on the wall. Both inmates complied, stating they were only horse playing. I radioed the Control Center officer with the situation and responding staff assisted in restraining the two. Inmate Szeto was escorted to Health Services by other staff for evaluation and I escorted inmate Hardison to the Lieutenant's Office for an interview, turning custody of inmate Hardison over to Officer Kresock in the Lieutenant's area.

Id. On April 11, 2013, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Id., Committee Action). Petitioner stated "He never hit me. We were just horse playing. We are friends. This was not a fight." Id.

---

[1]The Incident Report was written on 4/09/2013, at 11:55 a.m. Id.

Noting that a 200 series incident report is mandatorily referred to the Discipline Hearing Officer ("DHO"), the UDC referred the charge to the DHO, recommending loss of available good conduct time and ninety (90) days loss of commissary privileges. Id. During the UDC hearing, staff member, Robert Gibson informed Szeto of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 19, Inmate Rights at Discipline Hearing).

Also on April 11, 2013, Szeto was provided with a Notice of Discipline Hearing before the DHO form. (Id. at 20, Notice of Hearing). Szeto did not request to be represented by a staff member. Id. However, he did request to call inmate, Rory Villejo, as a witness. Id.

On April 25, 2013, Petitioner appeared for a hearing before DHO, Todd W. Cerney. (Doc. 3-1 at 17-19, DHO Report). Petitioner was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Szeto received a copy of the incident report. Id. Prior to beginning the hearing, Szeto informed the DHO he no longer required initially requested inmate witness Villejo to provide testimony. Id. He indicated this by placing a mark on the BP-294, documenting his decision. Id.

Petitioner offered the following statement on his behalf:

> "Hardison and I are friends. He came up and shook me as a joke. I grabbed him. We were just messing around. He never actually hit me."

Id. Petitioner raised no procedural issues and no written statement was provided for consideration.

In addition to the Incident Report and Investigation, the documentary evidence which the DHO considered in making his determination included: (1) Memoranda from R. Kresock, M. Hause, C. Snyder and D. Barben, dated April 9, 2013; (2) Handwritten statement from R. Villejo #40290-424; (3) Evidence photographs taken on April 9, 2013; and (4) BOP Health Services Clinical Encounter for SZETO, S. #16365-014. Id.

The specific evidence taken from the relied upon documentary evidence was as follows:

> Szeto's involvement in the incident, as noted in Section 11 of Incident Report 2430576, as provided by J.M. Cramer, Correctional Officer, was reviewed. Paraphrased, J.M. Cramer writes: On 4/09/2013, at 1155 hrs, as I was exiting the Brady A Unit doorway, I observed inmate Hardison #10219-033 and SZETO #16365-014, engaged in a physical altercation just to the right side of the Brady A Unit door. Specifically, I observed both inmates squared off in fighting stances with their hands up to their faces. Inmate Hardison struck inmate Szeto with his left hand in on the right side of Szeto's face as I approached the door. Inmate Szeto was stepping toward Hardison in a fighting stance when I opened the door and gave both inmates a direct order to separate and get on the wall. Both inmates complied, stating they were only horse playing. I radioed the Control Center officer with the

> situation and responding staff assisted in restraining the two. Inmate SZETO was escorted to Health Services by other staff for evaluation and I escorted inmate Hardison to the Lt's Office for an interview, turning custody of inmate Hardison over to Officer Kresock in the Lt's area.
>
> Upon questioning by the DHO, SZETO denied the charge. He elaborated upon his plea by stating, "Hardison and I are friends. He came up and shook me as a joke. I grabbed him. We were just messing around. He never actually hit me." The DHO did not find SZETO's testimony at this hearing compelling in showing the charged act not committed. Although he claimed he and the other party were friends and were juste "messing around," the DHO believed the facts that the two were squared up in a fighting stance with SZETO seeming to strike a punch and blow to Hardison supported the charged act.
>
> After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence, listed in the paragraphs above, supports the finding, SZETO, Sonny, Register No. 16365-014, committed the prohibited act of Fighting with another person, Code 201, on 4/9/13, at or about 1155 hrs, Brady A, outside unit entrance, at LSCI Allenwood, PA.

<u>Id</u>. The DHO sanctioned Szeto to thirty (30) days disciplinary segregation; and loss of twenty seven (27) days DGCT. <u>Id</u>. The DHO documented his reasons for the sanctions given as follows:

> SZETO's involvement in a fight with another inmate potentially threatened not only the safety of the participants, but staff responding to the incident and other inmates in the area. Sometimes what appear to be isolated incidents (a fight in this case) evolve to involve others. With this, disciplinary segregation and disallowed good conduct time is sanctioned in an effort to punish SZETO for his behavior, and hopefully deter him from this behavior in the future.

5

Id. Szeto was advised of his appeal rights at the conclusion of the hearing. Id.

## II. Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses

6

and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at [28 C.F.R. §541.8](). The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence

would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

Since Szeto does not raise any procedural violations, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent Szeto is alleging the incident report was fabricated and there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not be subject to review where the standard in Hill is satisfied. Id.

In this case, the DHO documented in Section V, Specific Evidence Relied on to Support Findings, namely, the written reports and memorandums

10

of Officers Hause, Snyder and Barben, the hand written statement of Inmate Villejo, evidence photographs and Petitioner's BOP Health Services Clinical Encounter. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.13. Petitioner was found guilty of a 200-level, high category prohibited act. Pursuant to 28 C.F.R. §541.13, the following are the sanctions available for 200-level offenses:

> A. Recommend parole date rescission or retardation.
> B. Forfeit earned statutory good time or non-vested good conduct time up to 50%), or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
> B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
> C. Disciplinary Transfer (recommend)
> D. Disciplinary segregation (up to 30 days).
> E. Make monetary restitution.
> F. Withhold statutory good time.
> G. Loss of privileges: commissary, movies, recreation, etc.
> H. Change housing (quarters).

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum

available to the DHO. Accordingly, the petition will be denied.

## III. **Certificate of Appealability**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. §2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a §2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir. 2000)(en banc) (certificate of appealability not required to appeal from denial of §2241 petition), *abrogated on other grounds by* Gonzalez v. Thaler, ―――U.S. ――――, ――――, 132 S.Ct. 641, 649, 181 L.Ed.2d 619 (2012); Kornegay v. Ebbert, 502 Fed.Appx. 131, 133 (3d Cir. 2012). Thus, the Court need not address this issue in the current action.

## IV.     Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**.  A separate Order will be issued.


                                                        s/ *Malachy E. Mannion*
                                                        **MALACHY E. MANNION**
                                                        **United States District Judge**


**Dated:    May 11, 2015**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0248-01.wpd